# EXHIBIT A

Kevin W. Chiang (SBN 252391)
**EQUITY LEGAL GROUP, P.C.**
201 S. Lake Ave., Ste. 506
Pasadena, CA 91101
Telephone:  (818) 928-5677
Email:  kchiang@equitylegalgroup.com

Attorneys for Plaintiff
RICO BURGOS

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/11/2023 12:49 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Tarasyuk, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| RICO BURGOS, an individual,<br><br>              Plaintiff,<br><br>     v.<br><br>WESTFIELD OUTDOOR, INC., a Nevada corporation; and DOES 1-20, inclusive,<br><br>              Defendants. | Case No.: 23STCV07958<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Hostile Work Environment Harassment;**<br>2. **Sex/Gender Discrimination;**<br>3. **Retaliation in Violation of the FEHA;**<br>4. **Failure to Prevent Harassment, Discrimination, and Retaliation in Violation of the FEHA;**<br>5. **Retaliation in Violation of Labor Code § 1102.5;**<br>6. **Retaliation in Violation of Labor Code § 6310;**<br>7. **Wrongful Termination in Violation of Public Policy;**<br>8. **Violation of Labor Code § 227.3;**<br>9. **Violation of Labor Code § 226;**<br>10. **Violation of Labor Code § 203;**<br>11. **Violation of Labor Code § 2802;**<br>12. **Violation of Business & Professions Code § 17200, *et seq.*;**<br><br>**PUNITIVE DAMAGES**<br>**DEMAND FOR JURY TRIAL**<br>**UNLIMITED JURISDICTION** |

COMPLAINT FOR DAMAGES

Plaintiff RICO BURGOS ("Plaintiff"), hereby, brings this Complaint against Defendant WESTFIELD OUTDOOR, INC. ("Westfield" and/or the "Company"). Plaintiff alleges as follows on knowledge as to himself and his known acts, and on information and belief as to all other matters:

## I.    INTRODUCTION

1.    Plaintiff is an experienced sales professional, who joined Westfield to lead and develop its eCommerce Sales Division. From the outset, he performed and produced significant sales for the Company. His efforts, in fact, led his specific Division—Division 6, which was one of six Sales Divisions at Westfield—to experience positive sales growth of _66.45%_ during the 2022 sales year. Division 6 was also the _only_ Sales Division to experience any positive growth in 2022 and—as of November 9, 2022—was the only Division projected by Westfield to experience additional positive sales growth (at 58.7%) in 2023. (By contrast, the other five Sales Divisions were projected to experience _significant losses in sales_, ranging from a drop of 15.8% (in Division 1) to a drop as high as 45.5% (in Division 5).

2.    Notwithstanding, when Westfield conducted a layoff in November 2022 on the premise that it was "facing unprecedented market reset challenges in [the] S23 season," the Company eliminated the only Division that had growing sales—Division 6—thereby ending Plaintiff's employment.

3.    This was both shocking and surprising to Plaintiff because by the Company's own estimates, Division 6 was projected to close 60M in sales in 2023 (with a positive growth in sales of 58.7%), an amount substantially higher than the $24M projected for Division 5, the $32M projected for Division 4, and the $38M projected for Division 3.

4.    So, then, why was Plaintiff laid off? The explanation is simple. **_He was targeted for engaging in protected activity_**.

5.    Before submitting any complaints to human resources, he was widely praised and viewed as a thought leader. He also received positive feedback in his 2021 performance evaluation, along with a merit bonus and a salary increase.

6.    However, everything changed _after_ Plaintiff had complained about unlawful sex/gender harassment and workplace violence to human resources on or about July 14, 2022. From that point forward, he experienced wholesale retaliation. He was forced to continue working with the very person he had complained about so to avoid "caus[ing] [any] unwanted alert." He also received a poor evaluation,

COMPLAINT FOR DAMAGES

about a month after lodging his complaint, by *a person he did not even report to (a man by the name of CT Rickard)*.[1]

7. Regarding his complaint, Plaintiff never received an official response or update from human resources or the Company. Rather Westfield's CEO, Charlie Cai simply told him sometime in mid-September 2022 that none of his claims had been substantiated. When Plaintiff asked for more information and details—inquiring if Mr. Cai had even reviewed the various Teams messages in which Mr. Webb had made inappropriate comments about sex, AIDS, penises, and "anal trode[s]"—Mr. Cai seemed genuinely confused and said he did not remember seeing anything like that in the investigation.

8. As a result, Plaintiff knew from that point forward that his time with the Company was limited; and, like clockwork, he was fired less than a month after learning his harassment claims purportedly lacked merit.

9. Based on the foregoing, we are confident Plaintiff will prove he was retaliated against and that he will prevail on all the claims he is asserting in this Complaint, including for: (1) hostile work environment harassment; (2) sex/gender discrimination; (3) retaliation in violation of the Fair Employment and Housing Act ("FEHA"); (4) failure to prevent harassment, discrimination, and retaliation; (5) retaliation in violation of Labor Code section 1102.5; (6) retaliation in violation of Labor Code section 6310, and (7) wrongful termination in violation of public policy.

10. In addition, Plaintiff will prevail on his claims for unpaid vacation wages under Labor Code sections 227.3 and for all related penalties, as well as for unreimbursed business expenses under Labor Code section 2802.

## II.    THE PARTIES

11. Plaintiff is a resident of Los Angeles County, California, and at all times relevant performed work for Westfield in said County.

12. On information and belief, Westfield is a Nevada corporation. At all times relevant, Westfield employed Plaintiff in Los Angeles County, California, and committed all the wrongful acts alleged herein.

---

[1] This evaluation was almost a point lower than Plaintiff's evaluation from a year prior.

COMPLAINT FOR DAMAGES

13. Defendants are individually, jointly, and severally liable for the wrongful conduct alleged herein because each Defendant directly or indirectly, or through an agent or any other person, has exercised control over one another. Plaintiff is informed and believes and based thereon alleges that at all times relevant, each Defendant has been the agent and employee of its Co-Defendants, and in doing the things alleged in this Complaint has been acting within the course and scope of that agency and employment.

14. The true names and capacities of Defendants sued herein as Does 1 through 20, inclusive are unknown to Plaintiff at this time, but Plaintiff will amend this Complaint if and when the true names of said Defendants become known to him. Upon information and belief, each of the Defendants sued herein as a Doe is legally responsible in some manner for the events and happenings referred to herein; and any reference to "Defendant" or "Defendants" shall mean "Defendants and each of them."

## III. JURISDICTION AND VENUE

15. The Court has jurisdiction over this action pursuant to the California Constitution, specifically Article VI, Section 10, which grants the Superior Court original jurisdiction in all cases except those given by statute to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

16. This Court has jurisdiction over all Defendants because, upon information and belief, at all times relevant each Defendant has had sufficient minimum contacts in California, or otherwise has intentionally availed itself of California law so as to render the exercise of jurisdiction over it by a California Court consistent with traditional notions of fair play and substantial justice.

17. Venue is proper in this Court because, upon information and belief, each named Defendant transacts business in Los Angeles County, and/or the acts and omissions alleged herein took place within said County.

## IV. FACTUAL BACKGROUND

### A. Background Information Regarding Plaintiff

18. Plaintiff is a sales professional with over 25 years of relevant experience. He holds a bachelor's degree in Business Administration as well as a Professional Selling Certificate, both from California State University, Fullerton.

COMPLAINT FOR DAMAGES

19.    Prior to working for Westfield, Plaintiff was (1) National Sales Manager for Vertex Standard for over eight years, (2) Regional Sales Manager with C.P. Allstar Corporation for three years, (3) Western Regional Sales Manager with Marantec America Corp. for two years, (4) Director of Sales with Sangean America Inc. for five years, and (5) Director of eCommerce Sales with Kittrich Corporation for over seven years.

**B.    Within the First Year of His Employment, Plaintiff Immediately Produced Results and Sales Revenue for Westfield.**

20.    Plaintiff began his employment with Westfield in or around February 2021. He was hired as an "eCommerce Director" and was tasked to lead a new Sales Division—Division 6. From the outset, he produced results for the Company. He generated sales for the new eCommerce Division, using his professional network to bring in accounts from major eCommerce retailers like 1) Homedepot.com, 2) Amazon.MX, 3) Campingworld.com, 4) Tractorsupply.com, 5) eBay, 6) City Mill, 7) Belk, 8) Woot.com, 9) Chewy.com, 10) Kartit.us, 11) Overstock.com, 12) Unbeatablesale.com, 13) Boy Scouts of America, and 14) Amazon.com (Basics Private Label Program).

21.    His efforts were immediately recognized by his supervisors—Vice President of Sales Paul Goff and CEO Charlie Cai—both of whom were impressed by his work ethic and gave him good marks on his 2021 performance. Mr. Goff and Mr. Cai also awarded Plaintiff a $4,636.77 prorated incentive bonus and a $3,000 salary increase.

22.    During the 2022 sales year, Plaintiff continued to be productive and perform at a high level. In fact, because of his efforts, the sales in his Division continued to grow and increase by **_66.45%_**, as compared to 2021.

23.    Everyone was thrilled with these metrics, especially Mr. Cai (who at that point had become his only supervisor, as Mr. Goff had retired in 2021). Indeed, every time Plaintiff and Mr. Cai spoke, Cai shared how happy he was with Plaintiff's performance.

24.    Things quickly changed, however, when Plaintiff spoke out and complained about his interactions with a co-worker named Darrin Webb. At that point, Plaintiff was left to fend for himself, was treated like a pariah, and eventually was pushed out of the Company for pretextual reasons.

/ / /

**C.**    **Plaintiff Was Subjected to Immediate Retaliation When He Complained About Harassing Behavior by Darrin Webb.**

25.    On July 14 and 20, 2022, Plaintiff sent a confidential complaint (and a second revised complaint) to Mr. Cai and Tonya Strange (Westfield's HR Director) regarding his coworker, Darrin Webb. In these complaints, Plaintiff detailed "inappropriate medical, sexual, offensive, & disparaging remarks" that Mr. Webb had made to him, including:

- "multiple inappropriate, offensive jokes and disparaging remarks (sexual, medical, slurs, epithets, political agendas specifically about gun laws, and **_offensive jokes about shooting/killing [Plaintiff], etc._**) via the Teams verbal video calls and written messages."

- "derogatory and . . . offensive remarks about Rachel," for example calling her a cunt in front of Plaintiff.

- "shar[ing] some stories with [Plaintiff] about a Product Manager by the name of Tonya Derziotis" and the fact that he (Mr. Webb) "had a fling and sexual encounters with one of Tonya Derziotis's daughters," which Webb described with "sexually graphic" language.

26.    To substantiate his complaints Plaintiff included screenshots of Teams messages he had received from Mr. Webb, where Webb initiated conversations with him about sex, AIDS, penises, and "anal trode[s]." On the basis of these allegations, Plaintiff asked that Mr. Cai and HR step in and help him navigate through what clearly was a hostile work environment.

27.    Initially, Mr. Cai said that the Company was "tak[ing] [Plaintiff's] complaint very seriously."

28.    Yet, as soon as Plaintiff asked to cease all communications with Mr. Webb (given the nature of his complaints about Webb and the threats to his personal safety), Mr. Cai denied the request. Cai claimed that, "[s]ince the investigation [was] being conducted confidentially, [Plaintiff [would] need [to continue to] work/communicate with Darrin as usual instead of re-routing [his] communication to [Cai] which would cause unwanted alert."

29.    **_Thus, Plaintiff was forced to continue interacting with a known harasser (who had threatened to harm and kill him with a gun), which only made things worse for Burgos and his mental health and allowed him to be further subjected to a hostile work environment_**.

30.    About a month after submitting his complaint—and without any substantive update or intervention from HR—Plaintiff received his 2022 performance evaluation on August 19, 2022, learning

COMPLAINT FOR DAMAGES

that he had been rated poorly, at a score of 2.4 (almost a full point lower than his rating in 2021). He was shocked by this and immediately reached out to Mr. Cai and HR, asking for clarification or an explanation for what seemed to be clear retaliation. Plaintiff also submitted a robust rebuttal to the poor performance evaluation, to which the Company never responded.

31.    At or around the same, Plaintiff received paradoxical news about his 2022 performance. He learned that the Company had awarded him with an incentive bonus of $11,492.43. Then, a month later (on or about November 9, 2022), he learned that his Division was the _only_ Division projected to achieve any positive sales growth in 2023 and that the Company was estimating it would bring in substantially more revenue than Divisions 3, 4, and 5.

32.    Despite this, when the Company conducted layoffs on November 18, 2022 for supposed "unprecedented market reset challenges in [the] S23 season," Plaintiff's Division, which consisted of only two people (him and Josh Liley), was impacted:

> I would like to inform you that our company board and upper management have evaluated its workforce and future business strategies recently. As a result, the Company has made a difficult decision to eliminate the Sales Division 6. Therefore, after serious consideration, we are eliminating all positions in the Sales Division 6, which means both Rico Burgos and Josh Liley are separated effective today, November 18, 2022, unfortunately.
>
> From on now and on, the daily operation of E-commerce program will be led by Hengfeng E-Commerce team with the sales of Amazon Vendor Central and other related accounts led by CT Rickard, and product development and market efforts led by WF PDM team. All other business structure and workforce remains unchanged.
>
> As we are facing unprecedented market reset challenges in S23 season, it requires all employees to stay focused, work extremely hard, and put our best efforts to seize every single opportunity in S23 and beyond.

**D.    <u>Plaintiff Can Prove He Was Terminated for Pretextual Reasons</u>.**

33.    Given that Division 6 was the only Sales Division that produced positive sales growth in 2022 and was the only Sales Division projected to have any further positive sales growth in 2023, there is no legitimate reason supporting the termination of Plaintiff. If Westfield truly was concerned about "market . . . challenges" (as it claimed in the above Company-wide email), the last thing it would have

7

COMPLAINT FOR DAMAGES

done was eliminate the only Division with positive growth—especially one projected to gross over $60M in revenue.

34.    Moreover, if finances and "market . . . challenges" were truly a concern, Westfield would not have hired or recruited staff and personnel at such an aggressive pace at or around the time of Plaintiff's layoff. But the fact that it did belies the alleged basis for his termination.

35.    In particular, Westfield will have trouble justifying its hiring of salesperson Brandon Howard that occurred within days of its elimination of Division 6 and its firing of Plaintiff.

36.    The above evidence and what we are confident we will learn during discovery are more than sufficient to prove pretext and will allow a jury to conclude Plaintiff was terminated for clearly retaliatory and unlawful reasons.

37.    Based on the foregoing facts, Westfield is plainly liable to Plaintiff for (1) hostile work environment harassment; (2) sex/gender discrimination; (3) retaliation in violation of the FEHA; (4) failure to prevent harassment, discrimination, and retaliation; (5) retaliation in violation of Labor Code section 1102.5; (6) retaliation in violation of Labor Code section 6310, and (7) wrongful termination in violation of public policy.

38.    In addition, Plaintiff has potential wage and hour claims based on Westfield's failure to pay him his accrued but unused vacation wages, in violation of Labor Code section 227.3. The Company likely did this because it wrongly followed Indiana law, rather than California law, which was applicable to Plaintiff's employment.

39.    This explains why Plaintiff's offer letter stated, as follows: "You will be entitled to ten (10) days of paid vacation per calendar year. ***Such vacation will not carry over from year to year, and the Company does not pay out accrued but unused vacation upon the termination of employment for any reason***." This language, of course, directly violates Labor Code section 227.3, which prohibits use-it-or-lose-it vacation policies. *See* Lab. Code § 227.3 ("whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, ***all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served***") (emphasis added). As a result, Plaintiff is owed unpaid vacation wages, along with 30 days of waiting time penalties and related penalties

under Labor Code section 226.

40.    In addition, Plaintiff has incurred various unreimbursed business expenses by virtue of Westfield's wrongful withholding of his wages to the State of Indiana. Despite the fact Plaintiff performed nearly all his work in California,[2] the Company nonetheless made withholdings to the State of Indiana. This has caused him to incur various expenses (by having to hire/retain one or more accountants) to correct this tax issue—since the Company has refused to remedy the issue itself. As a result, Westfield must reimburse Plaintiff for all these necessary tax/accounting expenses under Labor Code section 2802.

41.    On or about April 11, 2023, Plaintiff timely filed an administrative charge against Westfield with the California Civil Rights Department and received an immediate "Right to Sue" notice. Thus, all conditions precedent to jurisdiction (i.e., the exhaustion of administrative remedies) have been fully satisfied.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Hostile Work Environment Harassment)

42.    Plaintiff re-alleges the allegations in paragraph 1-41, inclusive, and hereby incorporates them by reference as though fully set forth herein.

43.    At all relevant times, Westfield was an employer within the meaning of the FEHA and thus covered by FEHA's provisions.

44.    Plaintiff was subjected to unwanted harassing conduct on the basis of his sex/gender and/or perceived sexual orientation.[3]

45.    The harassing conduct was severe or pervasive.

46.    A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive.

47.    Plaintiff himself deemed and considered the work environment to be hostile or abusive.

48.    Westfield knew or should have known of the conduct, including because Plaintiff reported said conduct to Westfield. Notwithstanding, Westfield failed to take any immediate and appropriate

---

[2] As noted in his offer letter, Plaintiff's position was "based at [his] home office in Whittier, CA."

[3] Plaintiff is heterosexual but many of the hostile comments that his harasser made towards him suggested the harasser believed or perceived Plaintiff to be gay.

corrective action.

49. Plaintiff was harmed.

50. The conduct of Westfield as well as Westfield's failure to take immediate action were substantial factor in causing Plaintiff's harm.

51. As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff has sustained, and continues to sustain, economic damages in earnings and other employment benefits in an amount according to proof.

52. As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff has sustained, and continues to sustain, non-economic damages and emotional distress.

53. Plaintiff also has sustained general and special damages within the jurisdictional limits of this Court.

54. The acts and conduct of Westfield constitute "malice," "oppression," and/or "fraud" (as those terms are defined in California Civil Code § 3294(c)), in that these acts were intended by Westfield to cause injury to Plaintiff and/or constituted despicable conduct carried on by the Westfield with willful and conscious disregard of the rights of Plaintiff.

55. The acts of Westfield were done fraudulently, maliciously, and oppressively and with the advance knowledge, conscious disregard, authorization, ratification, or act of oppression, within the meaning of Civil Code § 3294 on the part of Westfield's officers, directors, or managing agents of the corporation, including the acts of Plaintiff's supervisors and Westfield's officers and employees. The actions and conduct of Westfield were intended to cause injury to Plaintiff and constituted deceit and concealment of material facts known to Westfield with the intention of Westfield to deprive Plaintiff of his property and legal rights, justifying an award of exemplary and punitive damages in an amount according to proof.

56. As a further direct, legal, and proximate result of Westfield's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorneys' fees according to proof.

/ / /

/ / /

COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

### (Sex/Gender Discrimination)

57. Plaintiff re-alleges the allegations in paragraphs 1-56, inclusive, and hereby incorporates them by reference as though fully set forth herein.

58. Westfield, by and through its agents, subjected Plaintiff to adverse employment actions as described above, including when it terminated Plaintiff's employment on the basis of sex/gender.

59. Plaintiff is informed and believes, and based thereon, alleges that his sex/gender was a substantial motivating reason for Westfield's adverse employment actions taken against him.

60. Plaintiff was harmed.

61. Westfield's discrimination towards Plaintiff violated FEHA and was a substantial factor in causing Plaintiff's harm.

62. As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff is entitled to the damages described at paragraphs 51-56.

## THIRD CAUSE OF ACTION

### (Retaliation in Violation of the FEHA)

63. Plaintiff re-alleges the allegations in paragraphs 1-62, inclusive, and hereby incorporates them by reference as though fully set forth herein.

64. As described herein, Plaintiff participated and/or engaged in protected activity by reporting unlawful conduct to Westfield, including illegal harassment.

65. Westfield subjected Plaintiff to adverse employment actions because of his protected activity as described above, including by wrongfully terminating his employment.

66. Plaintiff is informed and believes and based thereon alleges that his protected activity of reporting unlawful conduct at work was the substantial motivating reasons for Westfield's retaliatory acts.

67. Plaintiff was harmed.

68. Westfield's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

69. As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff is entitled to the damages described at paragraphs 51-56.

/ / /

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### (Failure to Prevent Harassment, Discrimination, and Retaliation)

70.    Plaintiff re-alleges the allegations in paragraphs 1-69, inclusive, and hereby incorporates them by reference as though fully set forth herein.

71.    Plaintiff was subjected to harassment, discrimination, and retaliation in the course of his employment with Westfield.

72.    Westfield failed to take any and all reasonable steps to prevent the harassment, discrimination, and retaliation.

73.    Plaintiff was harmed.

74.    Westfield's failure to take any and all reasonable steps to prevent harassment, discrimination, and retaliation was a substantial factor in causing Plaintiff's harm.

75.    As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff will seek and is entitled to the damages more fully described at paragraphs 51-56.

## FIFTH CAUSE OF ACTION

### (Retaliation in Violation of Labor Code § 1102.5)

76.    Plaintiff re-alleges the allegations in paragraphs 1-75, inclusive, and hereby incorporates them by reference as though fully set forth herein.

77.    Labor Code § 1102.5(a) states that an employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

78.    Labor Code § 1102.5(b) also provides that employers and any persons acting on their behalf shall not retaliate against an employee for disclosing information that the employee has reasonable cause to believe discloses a violation of state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation.

/ / /

COMPLAINT FOR DAMAGES

79.     Here, Westfield retaliated against Plaintiff for engaging in protected activity under Labor Code § 1102.5, including by terminating Plaintiff's employment.

80.     Plaintiff is informed and believes and based thereon alleges that his protected activity of reporting unlawful conduct was the substantial motivating reason for Westfield's retaliatory acts.

81.     Plaintiff was harmed.

82.     Westfield's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

83.     As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff will seek and is entitled to the damages more fully described at paragraphs 51-56.

### SIXTH CAUSE OF ACTION

### (Retaliation in Violation of Labor Code § 6310)

84.     Plaintiff re-alleges the allegations in paragraphs 1-82, inclusive, and hereby incorporates them by reference as though fully set forth herein.

85.     Labor Code § 6310(a) provides that "[n]o person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: (1) Made any oral or written complaint to . . . his or her employer. (2) Instituted or caused to be instituted any proceeding under or relating to his or her rights or has testified or is about to testify in the proceeding or because of the exercise by the employee on behalf of himself, herself, or others of any rights afforded him or her. (3) Participated in an occupational health and safety committee established pursuant to Section 6401.7."

86.     Labor Code § 6310(b) further provides that "[a]ny employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to . . . his or her employer . . . of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer. Any employer who willfully refuses to rehire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor."

///

COMPLAINT FOR DAMAGES

87.    Here, Westfield retaliated against Plaintiff for engaging in protected activity under Labor Code § 6310, including by terminating Plaintiff's employment.

88.    Plaintiff is informed and believes and based thereon alleges that his protected activity of reporting protected safety concerns was the substantial motivating reasons for Westfield's retaliatory acts.

89.    Plaintiff has been harmed.

90.    Westfield's retaliatory conduct was a substantial factor in causing Plaintiff's harm.

91.    As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff will seek and is entitled to the damages more fully described at paragraphs 51-56.

## SEVENTH CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

92.    Plaintiff re-alleges the allegations in paragraphs 1-91, inclusive, and hereby incorporates them by reference as though fully set forth herein.

93.    At all times relevant, the public policy of the State of California—as codified, expressed, and mandated by the FEHA and Labor Code—has been to prohibit employers (like Westfield) from harassing, discriminating, and retaliating against employees based on their sex/gender, perceived sexual orientation, and/or engagement in protected activity.

94.    Based on the facts described herein, Westfield's wrongful termination of Plaintiff violates the foregoing fundamental State public policies.

95.    Plaintiff was harmed.

96.    Westfield's wrongful termination was a substantial factor in causing Plaintiff's harm.

97.    As a direct, foreseeable, and proximate result of Westfield's wrongful conduct, Plaintiff will seek and is entitled to the damages more fully described at paragraphs 51-56.

## EIGHTH CAUSE OF ACTION

### (Violation of Labor Code § 227.3)

98.    Plaintiff re-alleges the allegations in paragraphs 1-97, inclusive, and hereby incorporates them by reference as though fully set forth herein.

99.    During his employment, Plaintiff accrued vacation wages, which he did not use. These wages were not paid to him, however, in violation of Labor Code § 227.3, which provides: "whenever a

14

contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served."

100.    Plaintiff was damaged by the foregoing conduct insofar as he was deprived of accrued and/or vested vacation wages and thus is entitled both to the underlying unpaid wages and to all applicable penalties.

101.    As a further direct, legal, and proximate result of Westfield's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action, and is accordingly entitled to an award of attorneys' fees according to proof.

## NINTH CAUSE OF ACTION

### (Violation of Labor Code § 226)

102.    Plaintiff re-alleges the allegations in paragraphs 1-101, inclusive, and hereby incorporates them by reference as though fully set forth herein.

103.    Westfield intentionally failed to furnish to Plaintiff upon each payment of wages, accurate itemized statements of all gross wages earned in each pay period. Moreover, Westfield failed to furnish to Plaintiff itemized statements indicating the amount of vacation wages that Plaintiff had accrued, in each pay period, during his employment.

104.    Plaintiff was damaged by this failure because he was unable to keep track of the amount of vacation wages or hours he had accrued (or was entitled to use) during his employment. Plaintiff thus is entitled to the penalty amounts provided for in Labor Code § 226(e).

105.    Plaintiff is further entitled to seek penalties for injuries under Labor Code § 226(e), including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period not to exceed four thousand dollars ($4,000).

106.    As a further direct, legal, and proximate result of Westfield's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorneys' fees according to proof.

COMPLAINT FOR DAMAGES

## TENTH CAUSE OF ACTION

### (Violation of Labor Code § 203)

107. Plaintiff re-alleges the allegations in paragraphs 1-106, inclusive, and hereby incorporates them by reference as though fully set forth herein.

108. California employers must compensate their employees all wages owed not later than 72 hours after the termination of their employment.

109. At the time of Plaintiff's discharge, Westfield knowingly and intentionally failed to pay Plaintiff all compensation/vacation wages he was owed within 72 hours of his discharge.

110. As a direct and proximate result of the unlawful conduct of Westfield, as set forth herein, Plaintiff has sustained damages, in an amount to be established at trial.

111. Plaintiff is entitled to waiting time penalties under Labor Code §§ 201 to 203, equal to thirty (30) days of Plaintiff's wages.

112. As a further direct, legal, and proximate result of the conduct of Westfield, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorneys' fees according to proof.

## ELEVENTH CAUSE OF ACTION

### (Violation of Labor Code § 2802)

113. Plaintiff re-alleges the allegations in paragraphs 1-112, inclusive, and hereby incorporates them by reference as though fully set forth herein.

114. Labor Code § 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

115. While Plaintiff was employed by Westfield, the Company routed all state withholdings and income taxes to the State of Indiana, rather than to the State of California, notwithstanding the fact Plaintiff had performed nearly all his work for the Company *in California*.

116. When Plaintiff alerted Westfield of this error, the Company did nothing to correct its mistake and required Plaintiff to fix the problem entirely on his own.

///

16

COMPLAINT FOR DAMAGES

117.     As a direct and proximate result of Westfield's unlawful conduct, Plaintiff has incurred necessary expenditures or losses for which he has not been reimbursed, in an amount to be established at trial.

118.     As a further direct, legal, and proximate result of Westfield's conduct, Plaintiff was caused to and did employ the services of counsel to prosecute this action and is accordingly entitled to an award of attorneys' fees according to proof.

## TWELFTH CAUSE OF ACTION

### (Violation of Business & Professions Code § 17200, *Et Seq.*)

119.     Plaintiff re-allege the allegations in paragraphs 1-118 inclusive, and hereby incorporate them by reference as though fully set forth herein.

120.     The foregoing conduct, as alleged, violates the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business acts or practices.

121.     Westfield committed acts of unfair competition, as defined by the UCL, by, among other things, engaging in the conduct as described herein.  Westfield's conduct has damaged Plaintiff, including by denying him earned wages, and therefore has been substantially injurious to him.

122.     Westfield's course of conduct, including its acts and practices, each of which violates California's laws, constitutes a separate and independent violation of the UCL. Westfield's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

123.     The harm to Plaintiff in being wrongfully denied lawfully earned wages outweighs the utility, if any, of Westfield's policies or practices and, therefore, Westfield's actions described herein constitute an unfair business practice of act within the meaning of the UCL.

124.     The unlawful and unfair business practices and acts of Westfield have injured Plaintiff in that he has been wrongfully denied earned compensation.

125.     Plaintiff seeks recovery of attorneys' fees and costs of this action to be paid by Westfield, as provided by the UCL and applicable law.

/ / /

COMPLAINT FOR DAMAGES

126. Because of the unfair business practices of Westfield, Plaintiff is entitled to restitution in an amount according to proof at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Westfield and/or Defendants, jointly and severally, as follows:

1. For special, compensatory, and economic damages according to proof;

2. For general and/or non-economic damages according to proof;

3. For prejudgment interest;

4. For an award of exemplary and punitive damages according to proof;

5. For reasonable attorneys' fees available under all applicable statutes, including but not limited to Government Code § 12965(b); Labor Code §§ 218.5, 226, 1102.5, and 2802; and Code of Civil Procedure § 1021.5;

6. For reasonable attorneys' fees available for all claims arising under the FEHA and/or Labor Code §§ 1102.5, 6310, 227.3, 226, 203, and 2802.

7. For penalties/premiums available under all applicable statutes, including but not limited to Labor Code §§ 226, 203, 1102.5, and 6310;

8. For statutory penalties or restitution for unfair business practices pursuant to Business & Professions Code § 17206, according to proof at trial;

9. For costs of suit herein incurred; and

10. For such other relief as the Court deems proper.

DATED: April 11, 2023                     **EQUITY LEGAL GROUP, P.C.**

By: _____
Kevin W. Chiang

Attorneys for Plaintiff
RICO BURGOS

18
COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint.

DATED:  April 11, 2023                    **EQUITY LEGAL GROUP, P.C.**

By:  _____
                                                    Kevin W. Chiang

                                                    Attorneys for Plaintiff
                                                    RICO BURGOS

COMPLAINT FOR DAMAGES